Honourable Your Honours, may it please the Court. My name is Richard Oryaki, representing the petitioner in this case. The way we see this, the issue here is whether or not the government met its burden of rebutting the presumption that Mr. Singh would be harmed if he returns to India. At the hearing on May 2, 2006, I believe, the immigration judge relied specifically and only on country conditions reports comprised of the report on human rights conditions from India, from the Department of State, and some from the U.K. Directorate, and some anonymous publications from the U.K. also that he relied on. For the proposition that the conditions in India have changed to such an extent that the petitioner should be able to go back and live safely in India or relocate to a different part of India and live safely, it is our position that those reports are very general in nature. The government argues that the country conditions report standing alone may be insufficient, but that there's more in this case. Well, yes, there is more, more country conditions reports, nothing specific to this individual. They rely heavily on discussions of religious persecution and whether or not the petitioner will be persecuted based on his religion if he goes back to India. But the petitioner was persecuted because he held a political opinion that the persecutor found offensive, and not only that, because he participated in political activities that the persecutor found offensive, not because of his religion. Tell me what the sequence is, the dates of the country reports and the date of the persecution that you're relying on. Well, the government relied on the country conditions report. The persecution took place way back in 2001, 2000 and 2001, respectively. The country conditions reports that the court relied on, that immigration court was, the U.K. directorate was from 2004, and the Department of State report was from 2005. And I believe they, on remand, they also looked at the one for 2006, if I'm not mistaken. The ones I have here, the U.K. report is 2002, as you said. State Department's 2005. Then there's a U.S. CIS report in 2003, you said. That's correct. Is there another one in 2006? Perhaps that. I thought the government submitted one in 2006 when we had this hearing, the Department of State report as well. I may be mistaken, but I was fairly certain that was submitted. But if you credit those reports, though, I mean, there is, I think, a dramatic change in country conditions, right? Undoubtedly. However, at that hearing in May of 2006, we specifically submitted evidence that the President of the party to which the petitioner belonged had just been arrested because he was advocating for a separate Sikh state, which is something the Respondent was doing when he was arrested. And this occurred in June of 2005. He was detained for over, until late August of 2005 and released. But his case is, there's a charge of sedition still pending against him just for making pro-Palestinian speech. Now, I would think that an event like that would be of more importance when trying to determine the country conditions in 2006 for somebody who was arrested for participating in political activities, specifically advocating an independent Sikh state called Palestine. None of that was even referenced by the judge when he made his decision. Instead, he focused primarily on the State Department reports that said conditions are good, the Sikhs are not singled out for any persecution, low-rank members of any political parties are not singled out for any persecution. I particularly found that the newspaper account of the arrest of Mr. Mann contradicted specifically the 2003 Q&A submitted by the government in which it states that Sikhs are not being arrested for political opinions, which is a clear contradiction from what happened in 2005. It is still happening. They refuse to take that into account. And the burden is to show by a preponderance of the evidence that the petitioner would be safe if he went back to India. That was not done. All they did was repeat what was written in country conditions report. Additionally, the same country conditions report begins every report by stating that there are serious human rights violations still taking place in India. It's there on the first page of every human rights report, including the one from 2005, including the one that the court relied on in this case. And yet none of that was mentioned. I would think if serious human rights abuses are still occurring, that would lend credence to an objective support to the petitioner's position that if he goes back, he would be persecuted based on his political opinion and political activities. Did your client exhaust his assertion that he couldn't relocate in India? He was asked that question, whether or not he could relocate. And he gave several reasons why he didn't believe it was reasonable to do so. One thing, his family owns land in Punjab. They rely on agriculture for their sustenance. And it is not reasonable for him to have to sell his land, unsure whether or not he could purchase land somewhere else. And it's also not reasonable for him to have to go move his entire family to parts unknown, not knowing what's going to happen to him when he gets there. Just a minute. Why do you say it's not reasonable to move under those conditions? I mean, he's willing to move to the United States, right, and giving up his land. Yes. Why can't he move within the country? Because the police in India are part of the government. No, you said it's not reasonable for him to give up his land, but that's what he's doing now. When he's going from one part of India to another, where this Court has decided in the past that when the persecutor is either the government or a government agency, it is not reasonable to allow to ask the Respondent to relocate to a safer part of India because it is presumed that the government or the police would be able to reach him wherever he goes within the country of India. The Indian police cannot reach the Petitioner here in the United States, regardless of what his views are. All right. Thank you. You've got time for rebuttal. Thank you, Your Honor. Good morning. May it please the Court. Colette Winston for Respondent Eric Holder. The immigration judge in this case found past persecution on account of political opinion. With that finding, after that finding, a rebuttable presumption arises of a well-founded fear of future persecution in India. The government here rebutted the rebuttable presumption based on two grounds, either one of which would require the petition for review to be denied. The first ground is fundamental changes in India since his departure in 2001. The second ground is relocation to avoid future persecution. As to the first ground, there is ample evidence in the record to show that the government met its burden by a preponderance of the evidence or that it was more likely than not that the Petitioner would not face persecution in India. There is no exhibit dated 2006. They're dated 2002, 2003, and 2005. Well, you know, all those exhibits may show a change in country conditions, and I think they do, but the cases require then that the agency relate that specifically to the Petitioner's circumstances, right? That's correct, Your Honor. And there's not too much of that in this record, is there? Well, first of all, the Petitioner waived that argument because he did not raise it in his brief to the Court. But even absent waiver, the board decision on the second page of the 2007 board decision states that the militancy in the Punjab was effectively suppressed years ago and that a person in the Respondent's position has no objective basis for a well-founded fear of persecution. So the Respondent's position was taken into account. The Respondent was not a party leader. He was merely a rank-and-file member. And the country reports address rank-and-file members. And the country report dated 2003, Remand Exhibit 5, says, there is little recent evidence suggesting that members or supporters of the Mann Party in Punjab are being systematically targeted for arrest or other forms of mistreatment by police, several sources say. And then further in that same exhibit, it states that claims by rank-and-file members of being targeted are dubious on page 1, unlikely on page 2. In fact, Mr. Mann was reelected to India's parliament in 2002. In 2002 as well, there are reports that say there's no awareness of recent arrests or incidents of harassment of Sikhs on account of political views. Sikhs are no longer targeted for holding pro-Kalistani views. That's all in Remand Exhibit 5. In Remand Exhibit 6, dated 2005, it states the now non-existent Khalistan movement. So the problem that the Sikhs were having in the 1990s and up to 2001 or so was because the Sikhs were advocating breaking away from India and forming their own country of Khalistan. But that's no longer the case, and as Your Honor mentioned, there have been dramatic changes in circumstances in India such that you no longer. Sotomayor, talking about change, you're saying they no longer want to set up a separate country of Khalistan? There is no longer such a strong movement to do that. And according to the country reports, both the reports that were submitted before the remand and the reports that were submitted after, it's clear that this is no longer really an issue for India. In part because the government of India changed hands following free and fair national parliamentary elections in the spring of 2004. And the militancy of the Sikh population has been severely weakened and virtually eliminated, which is what a 2002 United Kingdom report mentioned. Well, you know, it's supposed to show a change in country conditions. Now, the United Kingdom report that you just talked about says it's been peaceful since 1993. Well, we were supposed to talk about a change since, what, 2001. Yes. Well, I don't see how saying it's always been peaceful shows a change. Well, I think the change is gradual. It's not a black and white, in 2001 we were in immediate change. There's been kind of a spectrum, and the change has been gradually improving for the Sikh population, which comprises 60 percent in the Punjab region itself. Well, you know, it may be hard to justify these legal abstract principles that govern, but we're talking about showing a change from 2001. And to say, well, it was fine in 1993, and it's all very gradual, it's hard to say that supports the finding of a change. Now, maybe that's the wrong kind of rule to have, that you have to find a change. But that's what the law requires, that a change in conditions. And to take the position that it's really always been okay, and it's only been a sort of, it was not much of a problem to start with, but it's not there anymore, it doesn't really meet the requirement that you rebut this fear by showing a change. I understand, Your Honor, that the change has been gradual. And certainly the change that we have to look at here to see if the government met its burden of proof is a change that occurred after 2001, because Mr. Singh was arrested in 2000 and 2001. So it would have to be certainly after 2001. And I would submit that the remand exhibits especially show that there's been recent evidence as of 2003 of change. There's been Mr. Mann was elected in 2002. That's after 2001. There's plenty of evidence here in the record. And the government has to sustain its burden of proof, and the record would have to compel a contrary conclusion. And in this case, there are so much evidence and so many different reports that changes in India have taken place, whether they started way back before 2001, but they gradually got more and more dramatic as time went on, certainly after 2001, which is the relevant period. In terms of relocation, because the government could prove either change in circumstances or relocation, we submit that it is reasonable for Mr. Singh to relocate if he feels that the Punjab area of India, in which 60 percent of Sikhs live, is not safe for him. He could relocate to another area of India. Mr. Singh himself, at his hearing after remand, stated about his family, they don't stay in one location permanently. They move from place to place. And that was on page 108. So we would have to do that. Kennedy It's the government's position, it seems to me, that there should be no more kind of Sikh cases, that any cases we get from now on should be, government should win, and there should be no relief of any kind for Sikhs, because they can India is a pretty large place, and they can always find some place to go live. Kagan Well, that would be the case if the immigration judges in these future cases find past persecution based on political opinion. But each case has to be looked at individually. And Mr. Singh's particular case involved being a supporter of the Mann Party. So it's – it gave rise to this rebuttable presumption, which doesn't happen in every case. Kennedy Well, if it doesn't give rise to the presumption, you're worse off. What kind of case could a Sikh ever get relief on in this country again? Kagan There are very few, if any, that I know of. Kennedy Well, they could always move to another place in India. Anybody could find a place in India where he'd be fine. Kagan Well, that's true, but some people maybe wouldn't be able to move for some reason. But in this particular case – Kennedy Like what? Why would they not be able to move? Kagan It would depend – I mean, hypothetically, it would depend on the facts of each case, but perhaps they couldn't move. Kennedy Well, give me a hypothetical set of facts where someone in a Sikh in India wouldn't be able to move to another place in India. Kagan Well, perhaps a person who's a Sikh in India is taking care of elderly relatives and has to be present to help them out and can't move them because they need certain care that can only be found in the Punjab region, or there could be – I can envision some circumstances where it wouldn't be reasonable for a petitioner to move, depending on the petitioner's individual circumstances. Kennedy Well, we ought to get this printed up and distributed about when it would be reasonable not to move. Okay. Thank you. Kagan Well, if there are no further questions, I see that my time is up. Kennedy Yes. Kagan Thank you very much. The petition for review here should be denied. Kennedy Thank you. So what's your answer to – I think that Susheem asked you the question earlier. Why couldn't any Sikh move somewhere in India? Susheem It's very simple. Sikhs can move wherever they want in India so long as they've not been arrested, detained, mistreated by the Punjab police. The reason is very simple. Once you fall into the traps of the Punjab police and then you relocate somewhere else, the police is a part of the government. They are presumed to have the ability to locate you. A part of the exhibit that was submitted was the profile on country conditions from 1996. In that – and it's quite outdated, but in that particular report, it states that have the ability to locate any individuals within India. I have no idea if that has a reason to – why the court decided in seeing – having the seeing many years ago of the INS that it is presumed a countrywide prosecution if the government is the prosecutor in this particular case. No Sikh with experience with the Punjab police will be safe anywhere in India if the Punjab police locates that individual, especially if the reason is because they want a separate Sikh state. They want independence from India as a whole. They are deemed to be anti-national elements and subversives. That is why Mr. Mann was arrested for making pro-Khalistan speech in 2005, despite the fact that he was elected to parliament in 1999. It doesn't make any sense that you can now express your opinion of wanting a separate Sikh state and all of a sudden the Indian government is going to be all right with that. The evidence does not support that. And everything the government has argued does not address this Respondent's particular situation at all, because he will be persecuted if he advocates for an independent Sikh state. It does not matter where he is in India, because India does not want independence for Sikhs, period. Thank you. Thank you both very much. The case just argued will be submitted.
judges: Fletcher, Reinhardt, Tashima